[Cite as *Moore v. Mt. Carmel Health Sys.*, 2020-Ohio-6695.]

## IN THE COURT OF APPEALS OF OHIO
## TENTH APPELLATE DISTRICT
## FRANKLIN COUNTY

|  |  |  |
|---|---|---|
| MICHAEL MOORE, CONSERVATOR OF THE PERSON AND ESTATE OF JUSTIN T. MOORE | : | |
| | : | |
| | : | Appellate Case No. 2017APE-10-754 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 15-CVA-005683 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas Court) |
| MOUNT CARMEL HEALTH SYSTEM dba MOUNT CARMEL ST. ANN'S HOSPITAL, et al. | : | |
| | : | |
| Defendants-Appellees | | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of December, 2020

. . . . . . . . . . .

DAVID I. SHROYER, Atty. Reg. No. 0024099, 536 South High Street, Columbus, Ohio 43215
     Attorney for Plaintiff-Appellant

GRIER D. SCHAFFER, Atty. Reg. No. 0039695, 2075 Marble Cliff Office Park, Columbus, Ohio 43215
     Attorney for Defendant-Appellee, Mount Carmel Health System dba Mount Carmel St. Ann's Hospital

THEODORE M. MUNSELL, Atty. Reg. No. 0022055, JOEL E. SECHLER, Atty. Reg. No. 0076320, and EMILY M. VINCENT, Atty. Reg. No. 0086931, 280 Plaza, Suite 1300, 280 North High Street, Columbus, Ohio 43215
     Attorneys for Defendants-Appellees, Central Ohio Anesthesia, Inc. and Eric Humphreys, M.D.

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** This case is before the court pursuant to a remand from the Supreme Court of Ohio. *See Moore v. Mt. Carmel Health Sys.*, Ohio Slip Opinion No. 2020-Ohio-4113, ___ N.E.3d ___, decided on August 20, 2020. After remand, this matter was reinstated to the regular docket of the Tenth District Court of Appeals on September 10, 2020. Based on the Supreme Court of Ohio's instructions, we will consider the assignment of error that was rendered moot by our prior opinion. Before doing so, we will briefly discuss the factual and procedural background of the case.

## I. Facts and Course of Proceedings

**{¶ 2}** Our prior opinion set forth the following background:

This case arose from the Appellees' medical treatment of Justin Moore ("Justin") in December 2013 and January 2014. According to the complaint, Justin received medical care from Dr. Wesley Forgue, the Dialysis Center of North Columbus, The Little Clinic, and two nurses during December 2013 through January 2014. The complaint further alleged that these parties failed to properly treat Justin when he presented for treatment of a cough and during hemodialysis, which caused Justin to be transferred on an emergency basis to Mouth Carmel [Mount Carmel Health System dba Mount Carmel St. Ann's Hospital] on January 20, 2014. In addition, the complaint alleged that when Justin was treated at Mount Carmel on January 20, 2014, Dr. Humphreys and others failed to properly and timely perform endotracheal intubation, which resulted in hypoxia, cardiac and respiratory

arrest, and a permanent anoxic brain injury. These events, in turn, allegedly caused Justin permanent injury, including loss of his ability to walk and care for himself, impairment of his speech and communication ability, and other debilitating injuries.

On July 10, 2014, the Cuyahoga County Probate Court appointed [Michael] Moore conservator of Justin's person and estate. Moore subsequently filed a pro se medical malpractice action against Mount Carmel, COA [Central Ohio Anesthesia, Inc.], Dr. Humphreys, Dr. Wesley Forgue, the Dialysis Center of North Columbus, The Little Clinic, and two nurses who had treated Justin before his admission to Mount Carmel. COA was the medical practice that employed Dr. Humphreys.

*Moore v. Mt. Carmel Health Sys.*, 2018-Ohio-2831, 117 N.E.3d 89, ¶ 3-4 (10th Dist.), *reversed by* Ohio Slip Opinion No. 2020-Ohio-4113, ___ N.E.3d ___.

{¶ 3} Moore later dismissed various defendants without prejudice, leaving Mount Carmel, COA, and Dr. Humphreys as the remaining defendants. Although the complaint had been filed within the applicable statute of limitations, Moore failed to serve Dr. Humphreys within the one-year service period designated in Civ.R 3(A). As a result, Dr. Humphreys and COA filed a motion for summary judgment in February 2017, contending that Moore's action was barred. *Id.* at ¶ 12. Although Mount Carmel was properly served with the complaint, it filed a motion for summary judgment based on the fact that the lack of service on Dr. Humphreys meant that Moore had no viable claim for vicarious liability against Mount Carmel. *Id.* After the motions were filed, Moore requested service by personal and certified mail on Dr. Humphreys, and service was eventually

obtained in March 2017.   *Id.* at ¶ 13.

{¶ 4} In September 2017, the trial court rendered summary judgment in favor of Mount Carmel, COA, and Dr. Humphreys, and dismissed the case with prejudice.   *Id.* at ¶ 16.   "The court concluded that service was not properly made on Dr. Humphreys until March 2017, and that the savings statute in R.C. 2305.19 did not apply.   Additionally, the court held that Mount Carmel could not be held liable because Dr. Humphreys was not an employee and the expiration of the statute of limitations against Dr. Humphreys extinguished any secondary liability of the hospital."   *Id.* at ¶ 16-17.

{¶ 5} "Finally, the court rejected Moore's claims against COA on two grounds. The first ground was that if no action could be maintained against Dr. Humphreys, COA would not be liable on the basis of respondeat superior.   The court's second ground was that, even if claims could be brought against an employer for the acts of traditional employees who had been dismissed from an action under the statute of limitations, Dr. Humphreys was a part-owner of COA rather than a traditional employee."   *Id.* at ¶ 18.

{¶ 6} Moore then appealed the summary judgment decision.   On appeal, he claimed that the trial court erred by failing to apply the savings statute when the original complaint failed otherwise than on the merits and his request for service on Dr. Humphreys acted as a refiling of the complaint within one year of the failure.   *Id.* at ¶ 1. Based on this reasoning, Moore also argued that the trial court erred in dismissing the vicarious liability claims against Mount Carmel and COA.   *Id.*   Moore's final assignment of error maintained that the trial court erred in dismissing his respondeat superior claims against COA because Dr. Humphreys was an employee, not a partner or co-owner of the corporation.   *Id.*

**{¶ 7}** Our opinion, which was issued in July 2018, sustained Moore's first two assignments of error and reversed the judgment of the trial court. Because this allowed Moore to pursue his claims against all three defendants, we found the third assignment of error to be moot. *Id.* at ¶ 141-146.

**{¶ 8}** Concerning the first assignment of error, we held that R.C. 2305.19 (the savings statute) requires only that an action be filed within the statute of limitations, that the plaintiff commence or attempt to commence the action with the one-year service period in Civ.R. 3(A), and that the action fail otherwise than on the merits after the limitations period has expired. Furthermore, we held that while Moore did not dismiss the action and refile it, his request for service on Dr. Humphreys resulted in a dismissal of the complaint and a refiling. Such a dismissal was a failure otherwise than on the merits, and service was properly made on Dr. Humphreys within one year after the failure otherwise than on the merits, even though the statute of limitations for the medical malpractice action expired in 2015. *Id.* at ¶ 26-94.

**{¶ 9}** Alternatively, we held that "even if we concluded that the trial court should have dismissed the complaint because service was not obtained within one year, we would modify the judgment so that the dismissal would be without prejudice." *Id.* at ¶ 94.

**{¶ 10}** Our opinion also rejected Mount Carmel's claim that the complaint was a nullity and the action was never "commenced" within the statute of limitations because Moore was not a real party in interest and could not legally file a pro se action on Justin's behalf. *Id.* at ¶ 96-132. Mount Carmel, COA, and Dr. Humphreys did not challenge this holding when appealing to the Supreme Court of Ohio.

**{¶ 11}** After our opinion was issued, Mount Carmel filed a notice of appeal and a

memorandum in support of jurisdiction with the Supreme Court of Ohio on August 30, 2018. The appeal was docketed as Supreme Court Case No. 2018-1233. The sole proposition of law Mount Carmel raised was that:

R.C. 2305.19 Does Not Extend the Time to Obtain Personal Jurisdiction to Commence an Action as Provided by Civ.R. 3(A) and the Applicable Statute Of Limitations.

Appellant Mount Carmel Health dba Mount Carmel St. Ann's Hospital's Memorandum in Support of Jurisdiction, p. 8.

{¶ 12} On August 31, 2018, COA and Dr. Humphreys filed a "second notice of appeal" and a memorandum in support of jurisdiction in Case No. 2018-1233. Their sole proposition of law, similar to the one Mount Carmel raised, stated that:

A Plaintiff's Failure To Serve The Defendant Before the Expiration Of the Statute of Limitations and the One-Year Commencement Period Set Forth in R.C. 2305.17 and Civ.R. 3(A) Is a Failure on the Merits as a Matter of Law.

Memorandum In Support of Jurisdiction of Appellants Eric Humphreys, M.D. and Central Ohio Anesthesia, Inc., p. 9.

{¶ 13} Subsequently, on October 17, 2018, Mount Carmel filed a notice of certification of a conflict, and the appeal was docketed as Supreme Court Case No. 2018-1479. COA and Dr. Humphreys joined that appeal as well on October 18, 2018. Again, the only issue raised related to the interplay of R.C. 2305.17 and Civ.R 3(A).

{¶ 14} On November 28, 2018, the Supreme Court of Ohio issued an order certifying a conflict and directed the parties to brief the following issue:

"Does the Ohio savings statute, R.C. 2305.19(A), apply to an action in which a plaintiff attempts, but fails to perfect service on the original complaint within one year pursuant to Civ.R. 3(A)? If so, when a plaintiff files instructions for service after the Civ.R. 3(A) one-year period, does the request act as a dismissal by operation of law and also act as the refiling of an identical cause of action so as to allow the action to continue?"

*Moore v. Mt. Carmel Health Sys.*, 154 Ohio St.3d 1436, 2018-Ohio-4732, 112 N.E.3d 922. On the same day, the court also accepted the discretionary appeals of Mount Carmel, COA, and Dr. Humphreys, and consolidated the two cases. *See Moore v. Mt. Carmel Health Sys.*, 154 Ohio St.3d 1437, 2018-Ohio-4732, 112 N.E.3d 922.

{¶ 15} As with the memoranda in support of jurisdiction, the merit briefs for both the certified conflict and discretionary appeals addressed only the issue pertaining to the savings statute and Civ.R. 3(A). *See* Case No. 2018-1479: Merit Brief of Appellant Mount Carmel Health dba Mount Carmel St. Ann's Hospital, p. 8, and Merit Brief of Appellants Eric Humphreys, M.D. and Central Ohio Anesthesia, Inc., p. 8-9; Case No. 2018-1233: Merit Brief of Appellant Mount Carmel Health dba Mount Carmel St. Ann's Hospital, p. 8, and Merit Brief of Appellants Eric Humphreys, M.D. and Central Ohio Anesthesia, Inc., p. 8-9.

{¶ 16} After considering the briefs, the Supreme Court of Ohio reversed our decision as to the only issue on appeal. The court resolved "the certified-conflict question by stating that the savings statute may be applied only when its terms have been met. Thus, when, as here, (1) a plaintiff attempts to commence an action but fails to obtain service within Civ.R. 3(A)'s one-year commencement period and (2) the action has

neither failed other than on the merits during that one-year period (i.e., been dismissed without prejudice) nor been refiled, (3) the plaintiff cannot use the savings statute to revive the action outside the limitations period." *Moore*, Ohio Slip Opinion No. 2020-Ohio-4113, __ N.E.3d __, at ¶ 36. Accordingly, the court remanded the case and instructed us to address the third assignment of error, which we had concluded was moot. With this background in mind, we will consider Moore's Third Assignment of Error.

## II. Status of Dr. Humphreys as an Employee of COA

{¶ 17} Moore's Third Assignment of Error states that:

The Trial Court Erred by Dismissing the Respondeat Superior Claim Against Central Ohio Anesthesia, Inc. Because Dr. Humphreys Was an Employee of Central Ohio Anesthesia.

{¶ 18} Under this assignment of error, Moore contends that the trial court erred in granting summary judgment to COA because Dr. Humphreys was an employee as well as a shareholder of COA. In this regard, Moore relies on several cases, including *State ex rel. Sawicki v. Lucas Cty. Court of Common Pleas*, 126 Ohio St.3d 198, 2010-Ohio-3299, 931 N.E.2d 1082, which, according to Moore, held that "an employer practice can be vicariously liable for the acts of its employee physician, even if the employee physician cannot be held liable for his alleged negligence." Merit Brief of Plaintiff-Appellant Michael Moore, Conservator of the Person and Estate of Justin Moore, p. 26. The basis for this contention is that "*respondeat superior* acts by imputing to the employer the acts of the tortfeasor, not the tortfeasor's liability." *Id.*

{¶ 19} The trial court disagreed with Moore's position and distinguished *Sawicki*

because the immunity defense in that case was not based on substantive liability. In contrast, the court noted that its own decision was based on the "statute of limitations," which was a determination of substantive liability. Doc. #350, Decision and Final Judgment, p. 11-12. The court also focused on *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, in which the Supreme Court of Ohio held, with respect to legal malpractice, that a law firm cannot be held liable for an attorney's actions where no liability is assigned to the attorney. *Id.* at p. 11.

{¶ 20} The trial court also rejected Moore's reliance on *Dinges v. St. Luke's Hosp.*, 2012-Ohio-2422, 971 N.E.2d 1045 (6th Dist.), which allegedly carved out an exception to *Wuerth* in situations where a physician is a "traditional employee" rather than a partner or co-owner. *Id.* at p. 12. The court first concluded that *Dinges* had misread *Wuerth*. *Id.* at p. 12-13. In addition, the court found that even if *Dinges* applied, Dr. Humphreys was a partner in COA, and COA therefore could not be held liable. *Id.* at p. 13.

{¶ 21} Our review of the trial court's decision is de novo. "Under Civ.R. 56, summary judgment is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing left to try. * * * It must be awarded with caution, resolving any doubts and construing all the evidence against the moving party. * * * It should be granted only when there is no genuine issue of material fact to be tried, when the moving party is entitled to judgment as a matter of law, and when it appears that reasonable minds can only reach an adverse conclusion regarding the nonmoving party's case." *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107, 614 N.E.2d 765 (10th Dist.1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375

N.E.2d 46 (1978). In reviewing trial court decisions granting summary judgment, appellate courts apply the same standards. *Id.*

{¶ 22} In challenging the trial court's decision, Moore points to Dr. Humphrey's statement that he was "employed" by COA. Moore also stresses that nothing in the law prevents shareholders of a corporation from being employees. Further, Moore argues that *Sawicki* was decided after *Wuerth* and did not rely on it. And finally, Moore relies on *Dinges* and other cases that have "consistently refused to apply *Wuerth* to bar claims against hospitals and medical practice groups for the actions of their employees." Appellant's Brief at p. 28.

{¶ 23} In contrast, COA argues that *Wuerth* prohibits Moore's respondeat superior claims. According to COA, Ohio courts have "consistently held that *Wuerth* applies to medical malpractice claims, whether the underlying physician is an 'employee' or an 'owner/shareholder' of the practice group." Merit Brief of Defendants-Appellees Eric Humphreys, MD and Central Anesthesia Associates, Inc., p. 43.

## A. The Law of Respondeat Superior

{¶ 24} "Generally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior * * *." *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (1994), citing *Councell v. Douglas,* 163 Ohio St. 292, 295-296, 126 N.E.2d 597 (1955). A fundamental legal maxim provides that "a person cannot be held liable, other than derivatively, for another's negligence." *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 254-55, 553 N.E.2d 1038 (1990), *overruled on other grounds by Clark* at 435. "[T]he most common form of

derivative or vicarious liability is that imposed by the law of agency, through the doctrine of respondeat superior." *Id.*

## B. *Wuerth*

{¶ 25} As indicated, the trial court relied on *Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, which held that "[a] law firm does not engage in the practice of law and therefore cannot directly commit legal malpractice," and that "[a] law firm may be vicariously liable for legal malpractice only when one or more of its principals or associates are liable for legal malpractice." *Id.* at paragraphs one and two of the syllabus.

{¶ 26} *Wuerth* involved a legal malpractice suit that an insurer filed in federal district court against its former attorney and the attorney's law firm. However, the district court dismissed the attorney from the suit because the statute of limitations for legal malpractice had expired before the complaint was filed. *Id.* at ¶ 7-8. The district court also dismissed the vicarious liability claims against the law firm because no legally cognizable claims existed against the attorney, and the firm did not directly practice law. *Id.* at ¶ 8.

{¶ 27} After the case was appealed, the Sixth Circuit Court of Appeals concluded that Ohio law on this issue was unsettled. It therefore certified a question to the Supreme Court of Ohio concerning whether Ohio law permits a legal malpractice claim to " 'be maintained directly against a law firm when all of the relevant principals and employees have either been dismissed from the lawsuit or were never sued in the first instance.' " *Id.* at ¶ 9, quoting *Wuerth*, 119 Ohio St.3d 1442, 2008-Ohio-4487, 893 N.E.2d 514 (a

procedural ruling accepted the certified question).

{¶ 28} *Wuerth* differs from the case before us because it involved a law firm, not a corporation employing physicians. However, the Supreme Court of Ohio stressed in *Wuerth* that it had often relied on similarities between the legal and medical professions when analyzing malpractice issues. *Id.* at ¶ 13. As a result, the court looked to precedent in the medical malpractice arena to decide the case. In particular, the court commented that "because only individuals practice medicine, only individuals can commit medical malpractice." *Id.* at ¶ 14, citing *Browning v. Burt*, 66 Ohio St.3d 544, 556, 613 N.E.2d 993 (1993). (Other citations omitted.) Applying this principle to the legal field, the court held that "a law firm does not engage in the practice of law and therefore cannot directly commit legal malpractice." *Id.* at ¶ 18.

{¶ 29} *Wuerth* did not decide whether the judgment dismissing the law firm should be affirmed, because the case was before it only on a certified question. However, the court did cite some examples of situations in which liability would not lie. For example, where a party settles with and releases a servant, no claim exists against the secondarily liable "master," because the master's right to recover against the primarily liable party has been extinguished. *Id.* at ¶ 22, citing *Losito v. Kruse*, 136 Ohio St. 183, 188, 24 N.E.2d 705 (1940).

{¶ 30} After receiving the answer to the certified question, the Sixth Circuit Court of Appeals affirmed the district court's dismissal of the case, stating that:

> [T]he Ohio Supreme Court's ruling is dispositive of all issues pertaining to
> Lane Alton. Having heard oral argument and having carefully reviewed the
> record on appeal, the extensive briefing of the parties, and the applicable

law, we find ourselves in complete agreement with the district court's well-reasoned opinion.

*Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v. Wuerth*, 349 Fed.Appx. 983, 984 (6th Cir.2009), *affirming* 540 F.Supp.2d 900 (S.D.Ohio 2007).

## C.   Post-*Wuerth* Decisions

{¶ 31} The Tenth District Court of Appeals has not yet applied *Wuerth* to cases involving claims against doctors and their corporate employers.   However, the Tenth District did follow *Wuerth* in a legal malpractice case against a law firm where the firm's attorneys had not been sued.   Although the statute of limitations had not yet expired when suit was filed, the individual attorneys were never brought into the case*.   See Illinois Natl. Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., L.P.A.*, 10th Dist. Franklin No. 10AP-290, 2010-Ohio-5872, ¶ 6.   In affirming the dismissal of the plaintiff's claims, the Tenth District stated that:

> The instant matter falls squarely within the confines of *Wuerth*.   The parties acknowledge that no individual attorneys have been sued for legal malpractice.   Further, the statute of limitations regarding these attorneys has run.   The trial court reached this determination, which Illinois National has not challenged on appeal.   All of Illinois National's arguments presuppose the idea that attorneys Cook and Close indeed committed malpractice.   *As it stands, however, it is only alleged that attorneys Cook and Close committed malpractice.   Because Illinois National neglected to file suit against these individual attorneys within the statute of limitations,*

*these allegations will remain just that. The direct liability of attorneys Cook and Close will never be conclusively established. Absent such direct liability on the part of attorneys Cook and Close, the Wiles firm cannot be vicariously liable.*

(Emphasis added; citations omitted.) *Id.* at ¶ 24. *See also Tobin v. Steptoe & Johnson, PLLC*, 10th Dist. Franklin No. 17AP-821, 2018-Ohio-2957, ¶ 8 (rejecting claim against law firm because no attorneys were named); *Sapienza v. Materials Eng. & Tech. Support Servs. Corp.*, 10th Dist. Franklin No. 15AP-101, 2015-Ohio-3323, ¶ 17-19 (while attorney and law firm were both sued, plaintiff never obtained service on attorney and claim against law firm, therefore, was not viable under *Wuerth*).

{¶ 32} Several districts in Ohio have applied *Wuerth* to bar malpractice claims against a medical or dental group where the allegedly negligent doctor or dentist was either not included or was not timely sued. *See Hignite v. Glick, Layman & Assocs., Inc.*, 8th Dist. Cuyahoga No. 95782, 2011-Ohio-1698, ¶ 13 (dental malpractice claim against dental office barred because statute of limitations against dentist had expired); *Whitcomb v. Allcare Dental & Dentures*, 8th Dist. Cuyahoga No. 97141, 2012-Ohio-219, ¶ 9-10 (same); *Rush v. Univ. of Cincinnati Physicians, Inc.*, 2016-Ohio-947, 62 N.E.3d 583, ¶ 23 (1st Dist.) (allegedly negligent doctor was not named in suit); *Wilson v. Durrani*, 1st Dist. Hamilton No. C-130234, 2014-Ohio-1023, ¶ 15 (release of another party included claims against doctor; therefore, doctor's practice could not be vicariously liable); *Henry v. Mandell-Brown*, 1st Dist. Hamilton No. C-090752, 2010-Ohio-3832, ¶ 14 (claims against doctor were not filed within the limitations period); *Smith v. Wyandot Mem. Hosp.*, 3d Dist. Wyandot No. 16-14-07, 2015-Ohio-1080, ¶ 17, fn. 4 (same); *Brittingham v. Gen. Motors*

*Corp.*, 2d Dist. Montgomery No. 24517, 2011-Ohio-6488, ¶ 50-51 (malpractice claim against General Motors, which hired company doctor, was not allowed where doctor was not timely sued).

{¶ 33} In contrast, a number of districts have distinguished *Wuerth* or found it inapplicable where claims against hospitals and their employees are concerned. *See Stanley v. Community Hosp.*, 2d Dist. Clark No. 2010-CA-53, 2011-Ohio-1290, ¶ 22; *Cope v. Miami Valley Hosp.*, 195 Ohio App.3d 513, 2011-Ohio-4869, 960 N.E.2d 1034, ¶ 21 (2d Dist.); *Taylor v. Belmont Community Hosp.*, 7th Dist. Belmont No. 09 BE 30, 2010-Ohio-3986, ¶ 30-34; *Henik v. Robinson Mem. Hosp.*, 9th Dist. Summit No. 25701, 2012-Ohio-1169, ¶ 19; *Cobbin v. Cleveland Clinic Found.*, 2019-Ohio-3659, 143 N.E.3d 1155, ¶ 30 (8th Dist.).

{¶ 34} For example, in *Stanley*, the plaintiff sued a hospital based on the alleged negligence of its employee, a nurse, in inserting an IV. However, he did not sue any individual employees. *Stanley* at ¶ 2-3. The trial court rendered summary judgment to the hospital based on *Wuerth* and the plaintiff then appealed. *Id.* at ¶ 5-6. On appeal, the Second District Court of Appeals held that the trial court's interpretation of *Wuerth* was "too expansive" and that *Wuerth* should only be applied to medical and legal malpractice cases, not to "medical claims." *Id.* at ¶ 20-22. *Accord Cope* at ¶ 21.

{¶ 35} The court's holding was based on several factors, including: (1) unlike nurses, doctors and lawyers are professionals and are not typically employees; (2) by statute and caselaw, nurses cannot commit malpractice; and (3) traditionally, respondeat superior claims like the one brought against the hospital did not require suit to also be brought against the employee. *Id.* at ¶ 20-22. As a result, the court reversed the

summary judgment granted to the hospital.   *Id.* at ¶ 25.

{¶ 36} Subsequently, in *Cope*, the Second District Court of Appeals further reasoned that:

> As noted in *Stanley*, nowhere in *Wuerth* does the court conclude that a medical claim brought against a hospital for the alleged negligence of one of its employees constitutes a malpractice claim.   *Id.* at ¶ 22.   Ultimately, this court's decision to give *Wuerth* a narrow application is supported by the public-policy considerations found at the heart of the "respondeat superior" doctrine, which supports vicarious liability.   A hospital employs a wide range of people who provide a variety of medical service to patients.   The hospital is in exclusive control of hiring criteria, training, and routine performance evaluation and review.   A hospital should be responsible for the negligence of its employees who perform medical services and act in the scope of their employment.   To allow a hospital to be shielded from the rule of "respondeat superior" liability due to a court's liberal application of the distinction carved out by *Wuerth* would effectively allow the distinction to swallow the rule.

*Cope* at ¶ 25.

### D.   The Decision in *Sawicki*

{¶ 37} Moore argues, despite *Wuerth*, that the later decision in *Sawicki*, a medical malpractice case, controls and applies here.   In *Sawicki*, the plaintiff originally filed medical claims against a doctor and the doctor's private employer, but the trial court

dismissed the doctor as a defendant because he was an employee of both a state medical college and the private employer. *Sawicki,* 126 Ohio St.3d 198, 2010-Ohio-3299, 931 N.E.2d 1082, at ¶ 3-4. The dismissal was based on the fact that the Court of Claims had exclusive jurisdiction to decide if the doctor was acting in his capacity as a state employee and was immune from suit. *Id.* at ¶ 4. However the trial court refused to also dismiss the private employer because it could be held liable based on respondeat superior. *Id.*

{¶ 38} The plaintiff then dismissed the case without prejudice and timely refiled the common pleas action against the doctor and private employer. *Id.* at ¶ 5. After the trial court again dismissed the doctor, the court issued a stay on the respondeat superior issue pending a decision from the Court of Claims. *Id.* At that point, the plaintiff filed for a writ of procedendo to require the trial court to vacate the stay and proceed with the case. *Id.* at ¶ 1. After the court of appeals granted the writ, the trial judge appealed to the Supreme Court of Ohio. *Id.* at ¶ 7.[1] In a brief, the plaintiff admitted that he had not sued the doctor in the Court of Claims and that the time for doing so had expired. *Id.* at ¶ 6.

{¶ 39} In addressing the issues, the Supreme Court of Ohio concluded that R.C. 2743.02(F), which governs immunity determinations, did not apply. Specifically, the court reasoned that the Court of Claims did not need to make an immunity decision "because neither the state nor its employee is the subject of the suit." *Id.* at ¶ 16. Consequently, even though the doctor was no longer a party, the Supreme Court of Ohio affirmed the grant of the writ and remanded the case for a decision on the respondeat

---

[1] There were two appeals in total to the court of appeals and the Supreme Court of Ohio. However, this is irrelevant and need not be discussed.

superior issue.   *Id.* at ¶ 32.[2]

{¶ 40} As Moore indicates, the majority opinion in *Sawicki* did not discuss its prior decision in *Wuerth*.   Instead, the majority focused on the fact that an individual may have dual employers; that the Court of Claims would only have to decide the immunity issue if an action were brought against the doctor as an employee of the state; and that its prior authority established that employers can be held liable where their employees have immunity from liability.   *Id.* at ¶ 17-18.

{¶ 41} These points are the context within which the Supreme Court of Ohio made the comments upon which Moore has relied.   Specifically, the Supreme Court of Ohio said that:

Thus, Associated's argument that it cannot be held liable if Temesy-Armos [the doctor] is personally immune fails.   An employee's immunity from liability is no shield to the employer's liability for acts under the doctrine of respondeat superior. * * * A private employer may still be liable even if the employee is personally immune, *for the doctrine of respondeat superior operates by imputing to the employer the acts of the tortfeasor, not the tortfeasor's liability.   See, e.g., Davis v. Lambert-St. Louis Internatl. Airport* (Mo.2006), 193 S.W.3d 760, 765-766 (a public employee's immunity "does not deny the existence of th[e] tort; rather it provides that [the employee] will not be liable for damages caused by his negligence"); *Hooper v. Clements Food Co.* (Okla.1985), 694 P.2d 943, 945 ("Under respondeat superior, *the negligence or wrongful act*, as opposed to the civil liability of the servant, is

---

[2] The case has no further history.

imputed to the master" [emphasis sic]).

(Emphasis added).    *Id.* at ¶ 28.

**{¶ 42}** According to Moore, we should focus on the above distinction – that the important consideration is the wrongful or negligent act of the servant, which is imputed to the master – not the servant's civil liability for the act.

**{¶ 43}** In dissenting in *Sawicki*, Justice Lundberg Stratton remarked on the majority's failure to discuss *Wuerth*, noting that:

> *Wuerth* involved a legal-malpractice claim filed directly against a law firm when none of its principals or employees were liable or even named as defendants.   We looked to medical-malpractice cases for guidance.   We held that a law firm may be vicariously liable for legal malpractice only when one or more of its principals or associates are liable for malpractice. Ironically, we now look to a legal-malpractice case for the same principle, that a private employer cannot be liable if its employee, a doctor, has been dismissed.   In this case, the majority has reached a different conclusion."

*Id.* at ¶ 45 (Lundberg Stratton, J., dissenting).

**{¶ 44}** The Supreme Court of Ohio has not chosen to revisit this issue since *Sawicki* was decided.   Some courts have remarked that *Sawicki* was based on immunity, which is not " 'a determination of liability' " and does not provide a shield for employers under respondeat superior.   *Friedman v. Castle Aviation*, S.D.Ohio No. 2:09-CV-749, 2011 WL 1740023, *7 (May 5, 2011), quoting *Sawicki* at 1088-1089.   *Sawicki,* in fact, noted the distinction between claims that are "extinguished by statute of limitations" and immunity, which does not decide liability.   *Sawicki* at ¶ 29.   *See also Thomas v.*

*Reserves Network*, 9th Dist. Lorain No. 10CA009886, 2011-Ohio-5857, ¶ 27.

**{¶ 45}** One court has found reliance on *Sawicki* "misplaced" because it did not overrule *Wuerth.* *Whitcomb*, 8th Dist. Cuyahoga No. 97141, 2012-Ohio-219, at ¶ 9. In contrast, some courts have concluded that "*Wuerth* is and should be limited in its application to the particular facts of that case." *Rush*, 2016-Ohio-947, 62 N.E.3d 583, at ¶ 33 (Stautberg, J., concurring separately), citing *Tisdale v. Toledo Hosp.*, 197 Ohio App.3d 316, 2012-Ohio-1110, 967 N.E.2d 280 (6th Dist.) and *Taylor*, 7th Dist. Belmont No. 09 BE 30, 2010-Ohio-3986.

**{¶ 46}** In *Tisdale*, a hospital was sued for the negligence of its nursing staff, but no employees were included in the suit. *Tisdale* at ¶ 3. The hospital then moved for dismissal under *Wuerth*, because the nurses had not been sued and the limitations period had expired; the trial court agreed. *Id.* at ¶ 5 and 10-11.

**{¶ 47}** On appeal, the court considered both respondeat superior and agency by estoppel. Concerning respondeat superior, the court looked to long-standing authority indicating that a party may sue either the master or servant, with no requirement that the employee be joined in the negligence suit. *Id.* at ¶ 15, citing *Losito*, 136 Ohio St. 183, 24 N.E.2d 705. (Other citations omitted.) In contrast, in agency by estoppel cases, which involve hospitals and independent contractor physicians, both the hospital and physician must be timely joined in the suit in order for the hospital's imputed liability to lie. *Id.* at ¶ 16-18, citing *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 29.

**{¶ 48}** The hospital argued on appeal that *Wuerth* had inserted a "new rule" governing all agency relationships in the medical and legal fields, which "extinguished

*Losito's* rule for pleading a hospital's vicarious liability and now required that its employees be joined as defendants before the statute runs, even if the complaint is otherwise timely against the hospital." *Id.* at ¶ 23-24. The court rejected that assertion, however, noting that *Wuerth* had cited *Losito* with approval. *Id.* at ¶ 25.

{¶ 49} Furthermore, the court noted Justice Moyer's concurring opinion, in which five court members had joined. *Id.* at ¶ 28, citing *Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, at ¶ 35 (Moyer, C.J., concurring). Specifically, in the concurrence, Justice Moyer stated that:

"I stress the narrowness of our holding today. This opinion should not be understood to inhibit law-firm liability for acts like those alleged by the petitioner. Rather, a law firm may be held vicariously liable for malpractice as discussed in the majority opinion. Further, our holding today does not foreclose the possibility that a law firm may be directly liable on a cause of action other than malpractice. Yet the limited record and the nature of answering a certified question do not permit us to entertain such an inquiry in this case."

*Tisdale*, 197 Ohio App.3d 316, 2012-Ohio-1110, 967 N.E.2d 280, at ¶ 28, quoting *Wuerth* at ¶ 35.

{¶ 50} After noting Justice Moyer's remarks, the court in *Tisdale* also stressed that:

In point of fact, the chief justice's cautionary language was probably superfluous. The nature of *Wuerth's* relation to his firm suffices to place this type of agency in a third classification – one that is distinguishable from both respondeat superior and agency by estoppel. Wuerth was a senior

partner and part-owner of Lane Alton. While attorneys are generally independent contractors in relation to their clients, Wuerth himself, in relation to Lane Alton, was neither an independent contractor nor an employee. *See Stanley v. Community Hosp.*, 2d Dist. No. 2010-CA-53, 2011-Ohio-1290, ¶ 20. For use as vicarious-liability precedent, those facts render *Wuerth* sui generis. The reach of its holding is thus circumscribed to legal-malpractice actions – or perhaps even more narrowly, as the chief justice implied, to legal-malpractice actions involving the same facts.

*Tisdale*, 197 Ohio App.3d 316, 2012-Ohio-1110, 967 N.E.2d 280, at ¶ 29.

**{¶ 51}** In summary, there is some disagreement among Ohio courts concerning the breadth of *Wuerth* and the effect, if any, of *Sawicki*. However, we should note that cases rejecting *Wuerth's* approach, or narrowing it, involve situations outside the malpractice setting. *See Scott Elliot Smith, LPA v. Travelers Cas. Ins. Co. of Am.*, S.D.Ohio No. 2:12-CV-00065, 2012 WL 1758398, *4 (May 12, 2012), citing *Tisdale*, *Stanley*, 2d Dist. Clark No. 2010 CA 53, 2011-Ohio-1290, and *Cope*, 195 Ohio App.3d 513, 2011-Ohio-4869, 960 N.E.2d 1034. Because the case before us does not involve claims outside the malpractice area, and because of the strong position the Tenth District Court of Appeals has previously taken in its interpretation of *Wuerth* vis-à-vis legal malpractice actions, we conclude that, as applied here, "[a]bsent such direct liability on the part of [COA], [the corporation] * * * cannot be vicariously liable" to Moore. *Illinois Natl. Ins. Co.*, 10th Dist. Franklin No. 10AP-290, 2010-Ohio-5872, at ¶ 24. Accordingly, we agree with the trial court that Moore's action against COA is barred because he failed to properly serve Dr. Humphreys within the period required and the statute of limitations

had passed.

**{¶ 52}** We do note an interesting analysis of similar issues by the Supreme Court of Delaware in a recent en banc proceeding. *See Verrastro v. Bayhospitalists, LLC,* 208 A.3d 720 (Del.2019). *Verrastro* involved a situation in which two doctors were dismissed because they had not been sued within the limitations period for malpractice actions, but their employer, a medical group, was timely sued. *Id.* at 723-724. After considering the law, the court held that because "the plaintiff sued the employer in a timely manner, settled principles of law authorize the plaintiff to proceed against that employer. Although the plaintiff must of course prove her claim against the employer, including that the employee was negligent, the fact that she failed to sue the employee in a timely manner does not act to immunize the employer." *Id.* at 723.

**{¶ 53}** In *Verrastro*, the court reconsidered its prior opinion in *Greco v. Univ. of Delaware*, 619 A.2d 900 (Del.1993), which had held that " '[s]ince Dr. Talbot (the employee) is not liable to Greco [the plaintiff] *on the merits*, because Greco's claims are barred by the medical malpractice statute of limitations, there is no vicarious liability to be imputed to Dr. Talbot's employers, the University and the Student Health Care Center.' " (Emphasis sic.) *Id.* at 726–27, quoting *Greco* at 904. According to the court, this conclusion about the "merits" in *Greco* "was inspired by § 217B(2) of the Restatement (Second) of Agency, Section 217B(2) – a provision that was not carried forward in the Third Restatement published in 2005 – [which] states that '[i]f the action is based solely upon the tortious conduct of the agent, judgments *on the merits* for the agent and against the principal, or judgments of varying amounts for compensatory damages are erroneous.' " (Footnote omitted; emphasis sic.) *Id.* at 727.

{¶ 54} The court commented that "*Greco's* reasoning, to the extent that it substituted the statute-of-limitations dismissal of the physician for an assessment of the physician's culpability, is in tension with itself. Having announced that 'the alleged negligence of the employee, who is a health care provider, must be the focus of any inquiry into the vicarious liability of the employer of that health care provider under the doctrine of respondeat superior,' the Court shifted its gaze from the employee's negligence/culpability and fixed its gaze on the employee's dismissal on procedural grounds." *Id.*

{¶ 55} After making these remarks, the Supreme Court of Delaware concluded that "review of traditional respondeat superior principles leads us to conclude that § 217B's 'on the merits' language was not intended to encompass procedural dismissals that do not adjudicate the wrongfulness of the agent's conduct. Instead and in context, we believe that the phrase 'judgment on the merits' in § 217B(2) means judgment on the merits of the conduct, that is, a judgment finding that the employee is not culpable." *Verrastro*, 208 A.3d at 727-728.

{¶ 56} The court found this conclusion consistent with respondent superior because its crux is a finding that an employee has been negligent. *Id.* at 728. In addition, the conclusion was consistent with res judicata treatment of procedural dismissals, "where '[a] judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless ... [t]he judgment in the first action was based on a defense that was personal to the defendant in the first action.' Thus, a dismissal can be 'on the merits' as it concerns the viability of another suit against the

dismissed party without having a collateral effect on a potentially responsible third party." (Footnote omitted.)  *Id.*, quoting Restatement of the Law 2d, Judgments, Section 51 (1982).

{¶ 57} Furthermore, the court commented that;

Section 217B(2), in our view, was meant to prevent substantively inconsistent outcomes and not meant to reach the issue of whether procedural defenses run from an agent to a principal.  For example, § 217 of the same Restatement states that "[i]n an action against a principal based on the conduct of a servant in the course of employment ... [t]he principal has no defense because of the fact that the agent had an immunity from civil liability as to the act."  The only consistent reading of the two sections of the Restatement is to say that, even if a case against an agent were subject to an immunity defense * * * that immunity would not accrue to the benefit of the principal except to the degree that the immunity applies equally to both principal and agent regardless of any principal-agent relationship.  In this regard, we view a time bar as analogous to a claim of immunity in that neither indicates the absence of wrongdoing, but only that the wrongdoer may not be held liable.  In the respondeat superior context, an agent's assertion of immunity does not depend on his lack of culpability, and the same can be said of any statute-of-limitations defenses that might be applicable.

*Id.* at 728.

{¶ 58} Finally, citing *Sawicki*, 126 Ohio St.3d 198, 2010-Ohio-3299, 931 N.E.2d

1082, as well as decisions from other jurisdictions, the *Verrastro* court stated that "[a]lthough the case law from our sister states appears to be split, the jurisprudential trend is tending toward the rule we adopt today." *Id.* at 730, fn. 42.

{¶ 59} Again, for the reasons previously stated, we agree with the trial court's decision. We present the case from the Supreme Court of Delaware only as an indication of an alternate point of view.

{¶ 60} Based on the preceding discussion, we agree with the trial court that Moore's claim against COA is barred.

E.   Application of *Dinges*

{¶ 61} The trial court also rejected the application of *Dinges*, 2012-Ohio-2422, 971 N.E.2d 1045. In this regard, the trial court stated that no court other than *Dinges* had narrowed *Wuerth* in the manner that *Dinges* suggested. Doc. #350, p. 12-13. In addition, the trial court held that even if *Dinges* applied, Dr. Humphreys was a part-owner of COA rather than a traditional employee. *Id.* at p. 13. Having reviewed the record, we agree with the trial court.

{¶ 62} In *Dinges*, the plaintiff filed a wrongful death action against a doctor and his medical group, based on alleged medical malpractice that caused the decedent's death. *Dinges* at ¶ 1 and 7. After the statute of limitations expired, the plaintiff filed an amended complaint, substituting the names of two other doctors from the same medical group, but failed to serve them. *Id.* at ¶ 11-13. The trial court dismissed the claims against these doctors, and the plaintiff also dismissed her claims against the other doctor, leaving the practice as the only defendant. *Id.* at ¶ 13-14 and 20. Relying on *Wuerth*, the court

dismissed the action, based on the fact that the medical practice could not commit malpractice. The court also found that the plaintiff failed to properly raise respondeat superior in the complaint. *Id.*

{¶ 63} On appeal, the Sixth District Court of Appeals first found that the plaintiff had adequately raised respondeat superior in the amended complaint. *Id.* at ¶ 31. The court then considered *Wuerth* and *Tisdale*, while at the same time noting that when the trial court considered whether the plaintiff (Dinges) could proceed with a claim against the practice, "the issue was simply whether *Wuerth* applied, and the particular distinction between 'employee' and 'partner/co-owner' was not seen as critical." *Id.* at ¶ 37. The court then said:

> Pursuant to our decision in *Tisdale*, it is now both genuine and material to the resolution of the second issue presented in this appeal to know whether Intermed, which is a medical professional corporation, not a hospital, is an employer of Orlop and Retholtz in the traditional sense, or whether the doctors are, in fact, partners and/or co-owners of an entity that merely performs administrative functions, such as providing a billing conduit. If the latter is true, as stated in *Tisdale*, supra, the relationship of the doctors to Intermed would fall into the third category identified by the Ohio Supreme Court in *Wuerth*.

*Id.* at ¶ 38.

{¶ 64} After considering the facts, the court of appeals found a genuine issue of material fact concerning whether the doctors were traditional employees or partners/owners when they treated the decedent. The case therefore was reversed and

remanded for further proceedings.   *Id.* at ¶ 39-40.

{¶ 65} In arguing that Dr. Humphreys should be considered a "traditional employee" under *Dinges*, Moore points to Dr. Humphreys' admission in his deposition that he was an employee of COA.   *See* Appellant's Brief at p. 24, citing Dr. Humphreys' deposition at 7:3-7.   Moore further asserts that even if Dr. Humphreys were a shareholder in COA, nothing prevented him from being liable under respondeat superior. *Id.* at p. 24-25.   However, Moore's arguments in this latter regard rely on *Sawicki* and other courts' limitations on or rejection of *Wuerth*, and we need not consider them further.

{¶ 66} We note that Dr. Humphreys and COA also admitted in their answers that Dr. Humphreys was an employee of COA.   *See* Doc. #50 and Doc. #51, p. 2, ¶ 4. However, that fact alone does not raise a genuine issue of material fact.   As noted by the trial court, both Dr. Humphreys and David Perdzock, COA's president, filed affidavits more fully explaining Dr. Humphreys' status.   Doc. #350 at p. 13.

{¶ 67} According to the evidence, Dr. Humphreys had been a shareholder of COA since 2002.   Doc. #163, Affidavit of David Perdzock, ¶ 2-3; Doc. #161, Affidavit of Dr. Humphreys, ¶ 4.   According to Perdzock, Dr. Humphreys, as a shareholder, did not receive a set salary.   Rather, like other shareholders, Dr. Humphreys received a draw during the year to help with cash flow.   Income was then decided at the end of year, according to company profits, and any profit was then disbursed to the shareholders. Perdzock Affidavit at ¶ 4.

{¶ 68} No evidence was submitted disputing these facts, and we agree with the trial court that, for purposes of applying *Dinges*, Dr. Humphreys was not a traditional employee, but was instead an owner of COA.   As a result, COA would not have been

responsible under respondeat superior for Dr. Humphreys' actions. Accordingly, the trial court did not err in rendering summary judgment in COA's favor with respect to claims based on COA's vicarious liability.

{¶ 69} As a final matter, we note that the Second District Court of Appeals issued an opinion on respondeat superior after briefing in this case occurred. *See Clawson v. Hts. Chiropractic Physicians, LLC*, 2d Dist. Montgomery No. 28632, 2020-Ohio-5351. In *Clawson*, the trial court dismissed an action where service had not been properly perfected on a treating chiropractor, and his employer was the only remaining defendant. *Id*. at ¶ 3-8. On appeal, the Second District affirmed the doctor's dismissal, but reversed the summary judgment in the employer's favor.

{¶ 70} In discussing the employer's liability, the court distinguished *Wuerth*, because "the relationship in *Wuerth* was that of partner and law firm, not a traditional employer-employee relationship." *Id*. at ¶ 21, citing *Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939. Because the *only evidence* submitted in *Clawson* indicated that the doctor was an employee, the court of appeals held that "a plaintiff may pursue the undisputed employer of a defendant chiropractor when the individual employee has been dismissed from the case for lack of service of the complaint on the employee within one year." *Id*. at ¶ 23. The facts in the case before us differ and establish that Dr. Humphreys was not a traditional employee, but was an owner of COA. As a result, *Clawson* is distinguishable and has no bearing here.

{¶ 71} Based on the preceding discussion, the Third Assignment of Error is overruled.

## III.  Conclusion

**{¶ 72}** Having resolved the remaining issues pertaining to Moore's Third Assignment of Error, and having found the assignment of error without merit, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

(Hon. Michael L. Tucker, Hon. Mary E. Donovan, and Hon. Jeffrey M. Welbaum, Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

David I. Shroyer
Grier D. Schaffer
Theodore M. Munsell
Joel E. Sechler
Emily M. Vincent
Hon. Richard A. Frye