[Cite as *Wilson v. Durrani*, 2014-Ohio-1023.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| KENNETH WILSON, | : | APPEAL NO. C-130234 |
| Plaintiff-Appellant, | : | TRIAL NO. A-1200264 |
| vs. | : | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | *O P I N I O N.* |
| and | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| Defendants-Appellees, | : | |
| and | : | |
| CINCINNATI CHILDREN'S HOSPITAL MEDICAL CENTER, | : | |
| Defendant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 19, 2014

*Eric C. Deters & Partners, P.S.C.*, and *Eric C. Deters*, for Plaintiff-Appellant,

*Lindhorst & Dreidame Co., L.P.A.*, *Michael F. Lyon* and *Bradley D. McPeek*, for Defendants-Appellees,

*Dinsmore & Shohl, L.L.P.*, and *J. David Brittingham*, for Defendant Cincinnati Children's Hospital Medical Center.

Please note: this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}   Plaintiff-appellant Kenneth Wilson appeals the judgment of the trial court granting summary judgment in favor of defendants-appellees Abubakar Atiq Durrani, M.D., and Center for Advanced Spine Technologies ("CAST") in this medical-malpractice action.  Because we conclude that no genuine issues of material fact exist, and that Dr. Durrani and CAST are entitled to judgment as a matter of law, we affirm.

*Factual and Procedural Background*

{¶2}   Wilson sought treatment for back pain with Dr. Durrani at defendant Cincinnati Children's Hospital Medical Center ("Children's").  In August 2008, Dr. Durrani surgically installed bilateral facet screws in Wilson's spine in the L-5/S-1 level.  According to the complaint, Wilson continued to experience pain after the surgery. Dr. Durrani continued to treat Wilson at Children's through the end of 2008, when Dr. Durrani left Children's and opened CAST.  Wilson then continued treatment with Dr. Durrani at CAST through September 2009.  Wilson allegedly experienced even greater pain than he had before his surgery.  Wilson eventually sought treatment with Dr. William Tobler, who removed the facet screws that had been installed by Dr. Durrani.  Wilson immediately experienced relief from pain.

{¶3}   Wilson filed a complaint against Dr. Durrani, CAST, and Children's, asserting claims for negligence, battery, and fraud against Dr. Durrani, negligent supervision against Children's, and negligence and vicarious liability against CAST. Wilson and Children's entered into a confidential settlement agreement in November 2012, and Wilson voluntarily dismissed his claims against Children's with prejudice on December 10, 2012.  After the settlement had been reached, Dr. Durrani moved

the trial court to require production of the settlement agreement. Dr. Durrani argued that, as a former employee of Children's, he may have been released as well. The court granted Dr. Durrani's request for production, and the settlement agreement was filed under seal.

{¶4} On February 6, 2013, Dr. Durrani filed a "bench brief" concerning the effect of the settlement agreement between Children's and Wilson. Dr. Durrani argued that the release provision contained in the opening paragraph of the settlement agreement, which defined Children's as including its "employees," operated as a release of all claims against Dr. Durrani because he had been an employee of Children's at the time he had performed surgery on Wilson until January 2009.

{¶5} On February 7, 2013, the trial court signed an entry granting Dr. Durrani's request to dismiss all claims against him relating to conduct that had occurred while he had been a Children's employee. The trial court reached this conclusion based upon the "unambiguous terms" of the settlement agreement between Children's and Wilson. But the trial court denied Dr. Durrani's request to dismiss the allegations relating to Dr. Durrani's conduct after he had left Children's. The entry, however, was not journalized until February 19, 2013.

{¶6} On February 11, 2013, Dr. Durrani and CAST filed a motion for summary judgment. Dr. Durrani and CAST argued in their motion that all of Wilson's actionable claims arose from the surgery performed by Dr. Durrani on Wilson at Children's, and that all of Wilson's claims were discharged by the unambiguous, broad language of the settlement agreement. Dr. Durrani and CAST argued in particular that the settlement agreement discharged all of Wilson's existing

or future claims and damages relating to the case numbered A-1200264 against Children's, which was defined in the agreement as including Children's employees, servants, and independent contractors, and would thus encompass Dr. Durrani. Dr. Durrani and CAST argued that no independent claims against CAST existed. Therefore, Dr. Durrani and CAST requested summary judgment on all claims.

{¶7} Wilson filed a response to the summary-judgment motion and to the trial court's February 19 order dismissing his claims against Dr. Durrani while Dr. Durrani had been a Children's employee. Wilson argued that the settlement agreement did not release Dr. Durrani individually. Wilson did not dispute that Dr. Durrani had been an employee of Children's; however, Wilson argued that the settlement agreement only released Children's to the extent that it would be vicariously liable for Dr. Durrani's conduct. Wilson also attached email correspondence between his counsel and counsel for Children's. In the emails, Wilson's counsel had proposed modifications to the settlement that counsel for Children's had refused to make. Wilson argued that the emails showed that his counsel had intended that the settlement effectuate only a dismissal of Children's. Finally, Wilson argued that the release did not cover Dr. Duranni's conduct after he had left Children's.

{¶8} The trial court granted summary judgment in favor of Dr. Durrani and CAST on the remainder of Wilson's claims. In its decision, the trial court reaffirmed its earlier decision dismissing the claims against Dr. Durrani related to his conduct at Children's.

{¶9} Wilson now appeals, arguing in a single assignment of error that the trial court erred in granting summary judgment to Dr. Durrani and CAST.

4

### *Summary Judgment*

{¶10} As an appellate court, we review a trial court's decision on summary judgment de novo. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Kell v. Verderber*, 1st Dist. Hamilton No. C-120665, 2013-Ohio-4223, ¶ 24. Summary judgment is proper if (1) no genuine issues of material fact remain for trial, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and with the evidence construed in favor of the nonmoving party, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977); *Kell* at ¶ 24.

{¶11} Wilson first takes issue with the trial court's February 19, 2013 order dismissing the claims against Dr. Durrani relating to his conduct while at Children's based upon the plain language of the settlement agreement. Dr. Durrani and CAST argue that we cannot review the trial court's February 19, 2013 order, because Wilson failed to separately assign as error the trial court's dismissal of those claims. We disagree.

{¶12} When the trial court dismissed the claims against Dr. Durrani for his conduct at Children's in its February 19 order, it relied upon evidence outside the pleadings, namely, the settlement agreement. Thus, the trial court, in essence, granted partial summary judgment on those claims. *See, e.g., State ex rel. Phillips Supply Co. v. City of Cincinnati*, 1st Dist. Hamilton No. C-120168, 2012-Ohio-6096, ¶ 14. When the trial court later granted Dr. Durrani's and CAST's formal summary-judgment motion, dismissing the remainder of Wilson's claims against Durrani and CAST, the trial court reaffirmed its February 19, 2013 order within that decision.

5

Therefore, Wilson's assignment of error, which challenges the trial court's grant of summary judgment, is broad enough to encompass the trial court's February 19 order.

{¶13} Wilson first argues that the settlement agreement did not extinguish his claims against Dr. Durrani. He alternatively argues that if his claims against Dr. Durrani were extinguished, the trial court erred in refusing to find that the settlement agreement was the product of mutual mistake or fraud. We disagree with both arguments.

### *The Settlement Agreement*

{¶14} The settlement agreement between Wilson (denoted as PLAINTIFF) and Children's provides in pertinent part:

This Confidential Settlement, Release, Indemnification, and Hold Harmless Agreement ("AGREEMENT") is entered into, by, and between KENNETH WILSON including his respective agents (actual, apparent, ostensible, or otherwise), heirs, executors, administrators, representatives, successors, insurers, and assigns ("PLAINTIFF") and CINCINNATI CHILDREN'S HOSPITAL MEDICAL CENTER, including its predecessors, successors, members, affiliates, officers, directors, agents, consultants, independent contractors, servants, representatives, underwriters, distributors, attorneys, employees, insurers, reinsurers, assigns, and each of them (collectively "CCHMC"). In consideration of the provisions set forth below, PLAINTIFF and CCHMC agree as follows:

6

For a total payment of  * * * to PLAINTIFF by CCHMC, which PLAINTIFF acknowledges and agrees constitutes good and valuable consideration for this AGREEMENT, receipt and sufficiency of which is acknowledged, PLAINTIFF hereby fully and completely settles, releases, remises, quitclaims, acquits, forever discharges and holds CCHMC harmless from any and all past, present and future claims, and potential claims, demands, damages, actions, liens (including but not limited to those asserted, either now or at any time in the future, by any private insurance carrier), debts, assessments, liabilities, settlements, fines, losses, indebtedness, judgments, rights, costs, fees, bills, expenses (including without limitation, all legal fees, interest [pre and post settlement] and penalties), remedies, accounts, obligations, suits, at law or in equity, and causes of action of whatsoever kind or nature, whether known or unknown, which are now existing or that might arise in the future, specifically including claims of common law liability, medical malpractice, negligence, wrongful death, survivorship, loss of consortium, loss of services, medical expenses, physical impairment, psychological impairment, disfigurement, lost wages, lost earning capacity, pain and suffering, mental anguish, punitive or exemplary damages, treble damages, attorneys' fees, interest, doctor bills, hospitalization, nurses, drugs, contribution, indemnity and other expenses or damages, incurred or to be incurred, *related to the care and treatment of [PLAINTIFF] (hereafter "the Incident") and the facts as set out in the case captioned, Kenneth*

7

_Wilson v. Abubakar Atiq Durrani, M.D., et al.,_ Court of Common Pleas, Hamilton County, Ohio, Case No. A1200264, (hereafter "Action"). PLAINTIFF further covenants not to sue or initiate any further legal action against CCHMC for any matter _that relates to or arises out of this Action or the Incident upon which it is based._

* * *

PLAINTIFF understands and agrees that the settlement sum being paid on behalf of CCHMC, as set forth above, is fair and equitable under all circumstances as consideration for the full and final settlement of any and all past, present or future claims, rights, causes of action, including, but not limited to, wrongful death and survivorship and/or demands for damages against CCHMC _arising out of the Incident and/or which are in any way related to the Action._

* * *

PLAINTIFF understands and agrees that any and all claims, rights, causes of action, and or demands that he has or could have had against CCHMC related to the Incident, whether known or unknown, are merged herein and that this AGREEMENT is intended as a general release of any and all existing and potential claims and rights that have been or may at any time hereafter be asserted against CCHMC that _are the result of or in any way related to the injuries of PLAINTIFF._

* * *

And it is therefore specifically agreed that this AGREEMENT shall be a complete bar to all claims or suits for injuries or damages by

**8**

PLAINTIFF against CCHMC, of whatsoever nature or for any reason, *arising out of or related to the Incident.* PLAINTIFF expressly waives and assumes the risk that there may be additional claims, facts, evidence, injuries, and/or damages which they do not know at the present time.

\* \* \*

Accordingly, PLAINTIFF agrees to defend, indemnify and hold CCHMC harmless from any and all claims, suits, losses, indebtedness, judgments, liens, rights, damages, demands, remedies, liabilities, accounts, fees, bills, expenses, costs and causes of action of every type, nature and kind or description whatsoever, known or unknown, foreseen or unforeseen, asserted by any person, company or other entity, that *may relate to any and all matters that arise out of or are related to the care and treatment of [PLAINTIFF] or the Incident.*

\* \* \*

There shall be no oral amendments of this AGREEMENT. Any amendments shall be in writing, duly signed by all parties.

\* \* \*

This AGREEMENT constitutes the complete and entire agreement between PLAINTIFF and CCHMC and supersedes all previous negotiations, proposals, and understandings among the parties and their counsel. The foregoing terms represent the only consideration for signing this AGREEMENT; no other promises or agreements of any

kind have been made to or by the parties or their counsel, or to or by

third parties, to cause the parties to execute this AGREEMENT.

(Emphasis added.)

{¶15} After reviewing the settlement agreement, we determine that the plain language of the settlement agreement released Wilson's claims against Dr. Durrani and therefore, his vicarious-liability claim against CAST. *See Pakulski v. Garber*, 60 Ohio St.3d 252, 255, 452 N.E.2d 1300 (1983); *see also Natl. Union Fire Ins. Co. v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶ 22 (a principal is only liable if an agent can be held directly liable).

{¶16} Because the settlement agreement is unambiguous on its face, we need not resort to parol evidence, such as email correspondence between attorneys, to uncover the signatories' intent. *See, e.g., Willard Constr. Co. v. City of Olmstead Falls*, 8th Dist. Cuyahoga No. 81551, 2003-Ohio-3018, ¶ 17-18 (the law governing contracts applies to settlement agreements, and if the agreement is unambiguous on its face, then the intent of the parties must be determined from the agreement itself without extrinsic evidence). Therefore, summary judgment was proper for Dr. Durrani on all of Wilson's claims and for CAST with regard to Wilson's vicarious-liability claim.

{¶17} As to Wilson's negligence claim against CAST, Wilson failed to come forth with any evidence in response to the summary-judgment motion that would create any genuine issues of material fact on this issue. *See* Civ.R. 56(E); *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). We, therefore, overrule Wilson's assignment of error, and affirm the judgment of the trial court.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **PIPER, J.,** concur.

JUDGE ROBIN N. PIPER, of the Twelfth Appellate District, sitting by assignment.

**Please note:**

The court has recorded its own entry on the date of the release of this opinion.