[Cite as *Weiler v. Knox Community Hosp.*, 2021-Ohio-2098.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| RICHARD WEILER, ET AL. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiffs-Appellants | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 20CA000018 |
| | : | |
| KNOX COMMUNITY HOSPITAL, ET AL. | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Knox County Court of
Common Pleas, Case No. 18PM01-
0014

JUDGMENT:    AFFIRMED

DATE OF JUDGMENT ENTRY:    June 22, 2021

APPEARANCES:

For Plaintiffs-Appellants:

GERALD S. LEESEBERG
CRAIG S. TUTTLE
Leesburg & Valentine
175 South Third St., Penthouse One
Columbus, OH 43215

For Defendant-Appellant:

FREDERICK A. SEWARDS
Poling Law
300 E. Broad St., Suite 350
Columbus, OH 43215

*Delaney, J.*

{¶1} Plaintiffs-Appellants Richard and Sherre Weiler appeal the October 23, 2020, judgment entry of the Knox County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee Knox Community Hospital.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Edward Blackburn, M.D. was the primary care physician for Plaintiff-Appellant Richard Weiler. At the time Weiler was a patient, Dr. Blackburn was an employee, agent, and/or member of Fredericktown Family Practice, Inc., and Defendant-Appellee Knox Community Hospital. In 2011, Dr. Blackburn ordered Weiler a Prostate-Specific Antigen (PSA) Test to measure the amount of PSA in Weiler's blood. The result of that PSA test was normal. After 2011, Dr. Blackburn did not order any further prostate cancer screening for Weiler, but Weiler thought he was receiving the PSA test in his bloodwork ordered by Dr. Blackburn. In 2016, Weiler was diagnosed with prostate cancer. The cancer has progressed to a stage that it is no longer responding to treatment.

{¶3} On May 22, 2017, Plaintiffs-Appellants Richard and Sherre Weiler filed a complaint in the Richland County Court of Common Pleas against Knox Community Hospital; Fredericktown Family Practice, Inc.; Christopher V. Blackburn as the Executor of the Estate of Edward Blackburn, M.D.[1]; Sarah Jackson, CNP; and Holly Mast, CNP. The complaint brought claims for medical negligence and failure to obtain informed consent for the defendants' alleged failure to conduct prostate cancer screening and timely diagnose Weiler's prostate cancer. The complaint alleged Dr. Blackburn was an

---

[1] Dr. Blackburn passed away before the complaint was filed.

employee, agent, and/or member of Fredericktown Family Practice and Knox Community Hospital.

{¶4} Weiler voluntarily dismissed Fredericktown Family Practice, Inc. as a defendant. Defendant Sarah Jackson, CNP filed a motion for summary judgment, which the Richland County Court of Common Pleas granted, and Jackson was dismissed as a party.

{¶5} The defendants also filed a motion to change venue to Knox County. The trial court granted the motion to change venue on January 10, 2018. The complaint was transferred to the Knox County Court of Common Pleas on January 19, 2018.

{¶6} After the transfer of the case to Knox County, Weiler dismissed Holly Mast, CNP as a defendant. Weiler also voluntarily dismissed his claim for informed consent.

{¶7} The only claim pending was medical malpractice against the remaining defendants, Christopher V. Blackburn as the Executor of the Estate of Edward Blackburn, M.D. ("Estate of Dr. Blackburn"), and Defendant-Appellee Knox Community Hospital ("KCH").

{¶8} Weiler entered into settlement negotiations with the Estate of Dr. Blackburn and KCH. Dr. Blackburn was the named insured on an individual insurance policy issued by The Doctors Company. KCH was the named insured on an insurance policy issued by Coverys Insurance Company. Dr. Blackburn and KCH were initially represented by the same trial counsel; as the settlement negotiations progressed, however, The Doctors Company retained separate counsel to represent it and the Estate of Dr. Blackburn during the negotiations.

{¶9} Weiler and the Estate of Dr. Blackburn entered into a Release and Settlement Agreement. On April 24, 2020, Weiler voluntarily dismissed the Estate of Dr. Blackburn as a defendant, with prejudice.

{¶10} On May 12, 2020, KCH filed a motion to compel Weiler to produce the full and complete copy of the Release and Settlement Agreement between Weiler and the Estate of Dr. Blackburn. KCH became aware there was allegedly language in the Release and Settlement Agreement that would preserve the right of Weiler to continue the negligence claim against KCH. Weiler opposed the motion and argued the parties to the Release and Settlement Agreement agreed it was confidential. The trial court ordered Weiler to provide only excerpted provisions of the Release and Settlement Agreement, which were pertinent to Weiler's reservation of rights. Weiler could make any redactions necessary to preserve the confidentiality of the Release and Settlement Agreement.

{¶11} KCH filed a motion for summary judgment on August 31, 2020. It contended that while Weiler brought a claim for medical negligence against both the Estate of Dr. Blackburn and KCH, liability attached to KCH via vicarious liability through the actions of its former employee, Dr. Blackburn. Via the Release and Settlement Agreement, Weiler settled with and released the Estate of Dr. Blackburn from his claim of medical negligence. Weiler voluntarily dismissed the Estate of Dr. Blackburn from the action, with prejudice. KCH argued it was black-letter law that the settlement with and the release of the employee who was primarily liable extinguishes the secondary liability of the employer, KCH. Based on the Release and Settlement Agreement, there was no genuine issue of material fact that KCH was entitled to judgment as a matter of law on the claim for medical negligence. The redacted Release and Settlement Agreement was filed under seal.

{¶12} Weiler filed a response to the motion for summary judgment. The Release and Settlement Agreement defined the term "RELEASEE" to exclude Dr. Blackburn's employer, KCH. Weiler described the settlement with the Estate of Dr. Blackburn as a partial settlement. Weiler argued Ohio law permitted a plaintiff to settle with a primarily liable employee and continue to pursue vicarious liability claims against the secondarily liable employer when the consideration paid by the employee was only a partial satisfaction of the plaintiff's damages.

{¶13} On October 23, 2020, the trial court granted KCH's motion for summary judgment. It is from this judgment that Weiler now appeals.

## ASSIGNMENTS OF ERROR

{¶14} Weiler raises one Assignment of Error:

{¶15} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE, WRONGLY HOLDING THAT AN EMPLOYER HOSPITAL CAN ONLY BE HELD LIABLE WHEN THE EMPLOYEE PHYSICIAN REMAINS SUBJECT TO LIABILITY."

## ANALYSIS

{¶16} The issue before this Court is whether the trial court erred when it granted summary judgment in favor of KCH in finding that a settlement with the employee, as the primarily liable party, extinguishes the claim of liability against the employer, the secondarily liable party. Based upon our interpretation of current Ohio case law on this issue, we find the trial court did not err.

## Standard of Review

{¶17} We refer to Civ.R. 56(C) in reviewing a motion for summary judgment. The moving party bears the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶18} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

{¶19} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

## Respondeat Superior

{¶20} The Ohio Supreme Court explained in *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (1994), that "[g]enerally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior." *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio

St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶ 20. The Court adopted a theory of vicarious liability in *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 553 N.E.2d 1038 (1990). It held that "[i]t was a fundamental maxim of law that a person cannot be held liable, other than derivatively, for another's negligence. * * * [T]he most common form of derivative or vicarious liability is that imposed by the law of agency, through the doctrine of *respondeat superior*." *Wuerth*, ¶ 20 quoting *Albain* at 255, overruled on other grounds by *Clark*, 68 Ohio St.3d at 444-445. Vicarious liability "depends on the existence of control by a principal (or master) over an agent (or servant), terms that [the Court] have used interchangeably." *Wuerth* at ¶ 20 citing *Hanson v. Kynast*, 24 Ohio St.3d 171, 173, 494 N.E.2d 1091 (1986).

{¶21} In the instant case, the employment relationship between of KCH and Dr. Blackburn is not before this Court. The parties agree that Dr. Blackburn was an employee of KCH and acting within the scope of his employment at the time of the alleged medical negligence.

{¶22} The Ohio Supreme Court analyzed the issue of respondeat superior in *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939. *Wuerth* involved a claim for legal malpractice against the attorney and law firm filed in federal court. The district court dismissed the attorney from the suit because the statute of limitations for legal malpractice had expired before the complaint was filed. *Moore v. Mount Carmel Health System*, 2020-Ohio-6695, 164 N.E.3d 104, ¶ 26 (10th Dist.), citing *Wuerth* at ¶ 7-8. The district court next dismissed the vicarious liability claim against the law firm because there was no legally cognizable claim against the attorney, and the law firm did not directly practice law. *Id.* citing *Wuerth* at ¶ 8. On appeal

to the Sixth Circuit Court of Appeals, the court certified a question to the Ohio Supreme Court whether Ohio law permits a legal malpractice claim to "'be maintained directly against a law firm when all of the relevant principals and employees have either been dismissed from the lawsuit or were never sued in the first instance.'" *Moore* at ¶ 27 citing ¶ 9.

{¶23} In *Wuerth*, the Ohio Supreme Court examined its prior holdings as to the respective liabilities of a principal and agent:

> "For the wrong of a servant acting within the scope of his authority, the plaintiff has a right of action against either the master or the servant, or against both, in separate actions, as a judgment against one is no bar to an action or judgment against the other until one judgment is satisfied." [*Losito v. Kruse*, 136 Ohio St. 183, 187, 24 N.E.2d 705 (1940)], citing *Maple v. Cincinnati, Hamilton & Dayton RR. Co.* (1883), 40 Ohio St. 313. See also *State ex rel. Flagg v. Bedford* (1966), 7 Ohio St.2d 45, 47–48, 36 O.O.2d 41, 218 N.E.2d 601 ("This court follows the rule that until the injured party receives full satisfaction, he may sue either the servant, who is primarily liable, or the master, who is secondarily liable, and a mere judgment obtained against the former is not a bar to an action or judgment against the latter"). "The plaintiff, in any event, can have but one satisfaction of his claim." *Losito*, 136 Ohio St. at 187–188, 16 O.O. 185, 24 N.E.2d 705.
>
> Although a party injured by an agent may sue the principal, the agent, or both, a principal is vicariously liable only when an agent could be held directly liable. As we held in *Losito*, for example, "[a] settlement with and

release of the servant will exonerate the master. Otherwise, the master would be deprived of his right of reimbursement from the servant, if the claim after settlement with the servant could be enforced against the master." *Id*. at 188, 16 O.O. 185, 24 N.E.2d 705, citing *Herron v. Youngstown* (1940), 136 Ohio St. 190, 16 O.O. 188, 24 N.E.2d 708; *Bello v. Cleveland* (1922), 106 Ohio St. 94, 138 N.E. 526; *Brown v. Louisburg* (1900), 126 N.C. 701, 36 S.E. 166. Similarly, in *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, we recognized that "[t]he liability for the tortious conduct flows through the agent by virtue of the agency relationship to the principal. *If there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions.*" (Emphasis added.) *Id*. at ¶ 20, citing *Losito* and *Herron*. See also *Munson v. United States* (C.A.6, 1967), 380 F.2d 976, 979 (applying Ohio law and stating that "the master's sole liability depends upon a finding of liability on the part of the servant, so he cannot be held accountable where there is no such finding").

*Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶¶ 21-22. The Court did not decide whether the judgment dismissing the law firm should be affirmed but answered the certified question by holding, "[a] law firm does not engage in the practice of law and therefore cannot directly commit legal malpractice." *Wuerth* at ¶ 18. The Sixth District Court of Appels then affirmed the dismissal of the law firm based on the dismissal of the attorney. *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 349 Fed.Appx. 983, 984 (6th Cir.2009).

**Plaintiff's Settlement and Release of the Employee**

{¶24} There is no factual dispute that Weiler entered into a Release and Settlement Agreement with the Estate of Dr. Blackburn. The terms of the Release and Settlement Agreement were confidential, and the majority of the agreement filed under seal with the trial court was redacted. The unredacted portion of the Release and Settlement Agreement defined the "Releasees" as "CHRISTOPHER V. BLACKBURN, Individually and as Executor of the Estate of Edward D. Blackburn, Edward D. Blackburn (Deceased) and THE DOCTORS COMPANY." The redacted agreement stated, "[t]he definition of RELEASEES shall not include Knox Community Hospital." Weiler characterized the Release and Settlement Agreement as a partial settlement of his claim for medical negligence. Due to the redactions, we are unable to recite the terms of the agreement as to compensation for Weiler's injuries.

{¶25} The issue before this Court is whether Weiler's settlement and release of his claims with the Estate of Blackburn extinguished his claims of vicarious liability against KCH. We look to *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, where the Ohio Supreme Court favorably cited to three decisions from the First District and Eighth District that found settlement with the employee, the primarily liable party, extinguishes the liability of the employer, the secondarily liable party:

An example is *Radcliffe v. Mercy Hosp. Anderson* (May 14, 1997), Hamilton App. Nos. C–960424 and 960425, 1997 WL 249436, a wrongful-death case filed against Mercy Hospital and two physicians, both independent contractors who had treated the plaintiff at Mercy. The plaintiff settled her claim against the first physician, and the court granted summary

judgment in favor of the second physician. The court, in turn, granted summary judgment to the hospital on the issue of its liability for the alleged negligence of the independent-contractor physicians. The court concluded that once the primary liability was extinguished, either by settlement and release or by a favorable judgment, the secondary liability was necessarily extinguished also. *Id.*, citing *Losito v. Kruse.* "[T]here can be no vicarious liability imputed to a principal, if there is no liability on the part of the agent." *Id.*

In *Wells v. Spirit Fabricating, Ltd.* (1996), 113 Ohio App.3d 282, 680 N.E.2d 1046, [appeal not allowed, 77 Ohio St.3d 1514, 674 N.E.2d 369 (1997),] the appellate court concluded that the plaintiff's settlement with and release of the employee/defendant also released the employer. An "employer cannot be found to be liable for negligence he did not commit. The employer's liability is dependent on the negligence of the employee. Since the plaintiff released [the employee] for his negligence, there is no basis to support plaintiff's claim against Spirit [the employer]." *Id.* at 294, 680 N.E.2d 1046.

Likewise, in *Dickerson v. Yetsko* (Nov. 22, 2000), Cuyahoga App. No. 77636, 2000 WL 1739298, [appeal not allowed, 91 Ohio St.3d 1464, 743 N.E.2d 403 (2001)], the plaintiff settled with and executed a release to Dr. Yetsko. The court held that the release extinguished the secondary liability of Meridia Hospital because the hospital's liability, if any, was secondary to and derived solely from the primary liability of its agent. If the liability of the

primarily liable party was extinguished, the liability of the secondarily liable

party was likewise extinguished. *Id.*

*Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶¶ 21-23.

{¶26} The rationale of the rule espoused in *Losito* is "to protect the employer's indemnification rights against the employee, who bears primary liability." *Wells v. Spirit Fabricating, Ltd.*, 113 Ohio App.3d 282, 291, 680 N.E.2d 1046 (8th Dist. 1996). "'[W]here a person is chargeable with another's wrongful act and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable.' quoting *Travelers Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 14, 70 O.O.2d 6, 321 N.E.2d 787. It logically follows that release of the employee from liability would thwart the employer's ability to seek reimbursement from the employee for payments made to the plaintiff by destroying the employer's subrogation rights. *Wells*, 113 Ohio App.3d at 293, 680 N.E.2d 1046." *Comer*, 2005-Ohio-4559, ¶ 24.

{¶27} The *Wells* case further held that a partial satisfaction and a reservation of right to pursue a claim against the secondarily liable party would bar the claim:

Also, although there is only a partial satisfaction and plaintiff reserved her right to pursue a claim against defendant, the plaintiff cannot do so. The Ohio Supreme Court in *Krasny–Kaplan v. Flo–Tork, Inc.* (1993), 66 Ohio St.3d 75, 78, 609 N.E.2d 152, 154, held:

"The concept of indemnity embraces aspects of primary and secondary liability. Indemnification occurs when one who is primarily liable is required

to reimburse another who has discharged a liability for which that other is only secondarily liable. See Prosser & Keeton on Torts (5 Ed.1984) 341, Section 51. In the present case, no *liability* of either defendant to the plaintiff was found. Therefore, the traditional understanding of indemnity cannot apply, because appellee was never determined to be primarily liable." (Emphasis sic.)

The court in *Munson v. United States* (C.A.6, 1967), 380 F.2d at 979, also applied the above principle as follows:

"It should be clear that the primary-secondary characterization of the relationship between master-servant is a definition of their rights between themselves and has no bearing on their liability to the third party who has been injured. Thus, the master's right to indemnity from his servant, by way of subrogation to plaintiff's claims, is the crucial factor in releasing the master when the servant is released. It is not, as the Government contends, based on some abstract dissolution of the underlying liability to the plaintiff which occurs when the servant releases him for less than full compensation and plaintiff reserves his rights against the master. That view would seem to be an erroneous application of the rule that where master and servant are joined by plaintiff in one suit, a verdict against the master will not be allowed when the servant is simultaneously exonerated. In that situation, the master's sole liability depends upon a finding of liability on the part of the servant, so he cannot be held accountable where there is no such finding."

*Wells v. Spirit Fabricating, Ltd.*, 113 Ohio App.3d 282, 293, 680 N.E.2d 1046, 1053 (8th Dist.1996).

{¶28} When it answered the certified question as to the liability of a law firm based on the alleged malpractice of a non-party attorney, the Ohio Supreme Court in *Wuerth* acknowledged the similarities in legal and medical malpractice claims and utilized precedent in the medical malpractice arena. *Moore* at ¶ 28. In *Moore v. Mount Carmel Health System*, 2020-Ohio-6695, 164 N.E.3d 1041 (10th Dist.), the Tenth District Court of Appeals examined the conflict in the districts whether *Wuerth* should be applied to medical malpractice claims:

Several districts in Ohio have applied *Wuerth* to bar malpractice claims against a medical or dental group where the allegedly negligent doctor or dentist was either not included or was not timely sued. *See Hignite v. Glick, Layman & Assocs., Inc.*, 8th Dist. Cuyahoga No. 95782, 2011-Ohio-1698, 2011 WL 1327433, ¶ 13 (dental malpractice claim against dental office barred because statute of limitations against dentist had expired); *Whitcomb v. Allcare Dental & Dentures*, 8th Dist. Cuyahoga No. 97141, 2012-Ohio-219, 2012 WL 1755861, ¶ 9-10 (same); *Rush v. Univ. of Cincinnati Physicians, Inc.*, 2016-Ohio-947, 62 N.E.3d 583, ¶ 23 (1st Dist.) (allegedly negligent doctor was not named in suit); *Wilson v. Durrani,* 1st Dist. Hamilton No. C-130234, 2014-Ohio-1023, 2014 WL 1337583, ¶ 15 (release of another party included claims against doctor; therefore, doctor's practice could not be vicariously liable); *Henry v. Mandell-Brown*, 1st Dist. Hamilton No. C-090752, 2010-Ohio-3832, 2010 WL 3239118, ¶ 14 (claims

against doctor were not filed within the limitations period); *Smith v. Wyandot Mem. Hosp.*, 3d Dist. Wyandot No. 16-14-07, 2015-Ohio-1080, 2015 WL 1289500, ¶ 17, fn. 4 (same); *Brittingham v. Gen. Motors Corp.*, 2d Dist. Montgomery No. 24517, 2011-Ohio-6488, 2011 WL 6352294, ¶ 50-51 (malpractice claim against General Motors, which hired company doctor, was not allowed where doctor was not timely sued).

In contrast, a number of districts have distinguished *Wuerth* or found it inapplicable where claims against hospitals and their employees are concerned. *See Stanley v. Community Hosp.*, 2d Dist. Clark No. 2010-CA-53, 2011-Ohio-1290, 2011 WL 941527, ¶ 22; *Cope v. Miami Valley Hosp.*, 195 Ohio App.3d 513, 2011-Ohio-4869, 960 N.E.2d 1034, ¶ 21 (2d Dist.); *Taylor v. Belmont Community Hosp.*, 7th Dist. Belmont No. 09 BE 30, 2010-Ohio-3986, 2010 WL 3328650, ¶ 30-34; *Henik v. Robinson Mem. Hosp.*, 9th Dist. Summit No. 25701, 2012-Ohio-1169, 2012 WL 953138, ¶ 19; *Cobbin v. Cleveland Clinic Found.*, 2019-Ohio-3659, 143 N.E.3d 1155, ¶ 30 (8th Dist.).

*Moore v. Mt. Carmel Health Sys.*, 10th Dist. No. 2017APE-10-754, 2020-Ohio-6695, 164 N.E.3d 1041, 2020 WL 7352652, ¶¶ 32-33.

{¶29} We acknowledge the conflicts in the appellate districts as to the issue of vicarious liability and medical malpractice claims against hospitals and their employees. Our review of the law, however, shows that *Losito* and its progeny, which includes *Wuerth,* are currently valid precedent to resolve this appeal. "We * * * take this opportunity to remind the lower courts in this state that they are required to follow our precedent. *State*

*v. Fips*, 160 Ohio St.3d 348, 2020-Ohio-1449, 157 N.E.3d 680, ¶ 10 citing *Smith v. Klem*, 6 Ohio St.3d 16, 18, 450 N.E.2d 1171 (1983), citing *Merrick v. Ditzler*, 91 Ohio St. 256, 264, 110 N.E. 493 (1915).

{¶30} We note that as of the date of this opinion, the Ohio Supreme Court has accepted for review the appeal of *Clawson v. Heights Chiropractic Physicians*, LLC., 2nd Dist. Montgomery No. 28632, 2020-Ohio-5351, appeal accepted for review, 161 Ohio St.3d 1474, 2021-Ohio-717, 164 N.E.3d 477, where the issue before the Supreme Court is whether, "once an physician/employee's liability has been extinguished for alleged acts of malpractice the claimant can no longer pursue vicarious liability claims sounding in respondeat superior against the corporate employer of the physician."

**Covenant Not to Sue vs. General Release**

{¶31} Weiler also contends this case is distinguishable because the Release and Settlement Agreement only provided for a partial settlement, and he reserved his right to pursue a claim against KCH. He cites this Court to *Riley v. City of Cincinnati*, 46 Ohio St.2d 287, 348 N.E.2d 135 (1976). In *Riley*, the plaintiff suffered an injury after she stepped in a hole in a sidewalk. She sued the abutting property owners and the City of Cincinnati for her injuries. After the abutting property owners were dismissed from the action pursuant to a covenant not to sue executed by the plaintiff, the matter went to trial against the city and the jury returned a verdict for the plaintiff. On appeal, the Supreme Court held the covenant not to sue was not a bar to further proceedings against the city. It held:

> When an injured plaintiff brings a tort action against two tortfeasors, the
> liability of one being primary and the liability of the other being secondary,

and, prior to the trial of the action, plaintiff executes for a valuable consideration a covenant not to sue in favor of the defendant primarily liable, the consideration therefor being only for partial satisfaction of plaintiffs damages, such covenant is not a bar to further proceedings in the pending cause. (*Diamond v. Davis Bakery*, 8 Ohio St.2d 38, 222 N.E.2d 430, approved and followed.)

*Riley v. City of Cincinnati*, 46 Ohio St.2d 287, 348 N.E.2d 135, 136 (1976), paragraph one of syllabus. In resolving the matter, the Court examined the language of the covenant not to sue. It held that a covenant not to sue was "nothing more or less than a contract and should be so construed." *Id.* at 291. The Court found the terms of the contract (1) clearly stated that the consideration to be paid was only a partial compensation for the injury received, acknowledging she had suffered injuries in excess thereof; (2) it did not "release" any party but promised only to "cease and desist from prosecution" of the present action against the abutting property owners only; and (3) it expressly excepted and reserved all rights the plaintiff had against the city. *Id.* at 295.

{¶32} The Eighth District Court of Appeals examined a covenant not to sue in *Leon v. Parma Community Gen. Hosp.*, 140 Ohio App.3d 95, 746 N.E.2d 689 (8th Dist. 2000). The administrator of the patient's estate sued the hospital, alleging vicarious liability and negligent credentialing of the physician. The hospital impleaded the physician and radiology group in a third-party complaint for indemnity. The administrator executed a covenant not to sue with the physician and radiology group in exchange for $700,000. The covenant not to sue constituted a "full and final consideration of any and all claims or rights or cause of action" against the physician and radiology group. *Id.* at 97. The

covenant not to sue expressly reserved the right to bring claims against the hospital. *Id.* The administrator then settled his claim with the hospital. The only claim remaining was the third-party indemnification claim of the hospital against the physician and radiology group. *Id.* at 99.

{¶33} Counsel for the physician and radiology group filed a motion for summary judgment pursuant to *Radcliffe* and *Wells* arguing the administrator's settlement with the primarily liable parties extinguished the hospital's secondary liability. *Id.* The issue was whether the covenant not to sue had the effect of a release to extinguish the secondary liability of the hospital and preclude the indemnification claim. *Id.* The Eighth District found there was a difference between a covenant not to sue and a release:

> A covenant not to sue is nothing more than a contract and should be construed as such. *Diamond v. Davis Bakery, Inc.* (1966), 8 Ohio St.2d 38, 42, 37 O.O.2d 383, 385, 222 N.E.2d 430, 432. Limited by the language of the contract and the intent of the parties, a covenant not to sue will be upheld as such if it clearly states that (1) the consideration paid was only a partial compensation for the injury sustained; (2) the plaintiff was not "releasing" the other party from any claim, but promised only to "cease and desist" from further prosecution of the present action; and (3) the plaintiff is reserving its rights to pursue other claims. *See Riley*, 46 Ohio St.2d at 295, 75 O.O.2d at 336, 348 N.E.2d at 141. A release, on the other hand, is unqualified and absolute in its terms and gives rise to a rebuttable presumption that the injury has been fully satisfied. *Whitt v. Hutchison* (1975), 43 Ohio St.2d 53, 60, 72 O.O.2d 30, 34–35, 330 N.E.2d 678, 683.

It is well established that a plaintiff may settle a claim for partial satisfaction with one tortfeasor and execute a covenant not to sue. The covenant will not, however, act as a bar to further litigation against another tortfeasor who is also liable even where the suit is brought against a party who is only secondarily liable and who may have a right of indemnity against the party in favor of whom the covenant not to sue was executed. *Whitt*, 43 Ohio St.2d at 60–61, 72 O.O.2d at 34–35, 330 N.E.2d at 683. A covenant not to sue that does not purport to release a cause of action and does not expressly recognize that the consideration paid thereunder as full satisfaction for the injury will not bar actions against others for causing the injury where the injury has not been fully compensated. *Id*.; see, also, *Mason v. Labig* (June 29, 1989), Greene App. No. 87–CA–91, unreported, at 40–43, 1989 WL 72234.

*Id*. at 99-100. The court examined the language of the document executed by the administrator, the physician, and radiology group and concluded it was a covenant not to sue as opposed to a general release. *Id*. Because it was a covenant not to sue, the court found *Radcliffe* and *Wells* did not apply to bar the hospital's indemnification claim against the physician and radiology group.

{¶34} In this case, we do not have access to the full terms of the Release and Settlement Agreement as the courts did in *Riley* and *Leon*. The filed copy of the Release and Settlement Agreement was redacted so that only the terms relating to the reservation of rights were available for court's review. In his appellate brief, Weiler contends that KCH did not object to the redactions to preserve its claim against liability. We find this argument

disingenuous because Weiler is relying on the terms of the Release and Settlement Agreement that are redacted and unknown to the other parties or the court to argue for judgment in his favor. Weiler contends the Release and Settlement Agreement was a partial settlement. In his appellate brief he states it was a partial settlement because Weiler "will eventually suffer a premature death as a result of his cancer, giving rise to an entirely new and yet-to-accrue wrongful death claim." (Appellant's Brief, p. 20). Weiler may amend his complaint for medical malpractice to include a claim of wrongful death at some point in the unfortunate future, but there is no dispute that a wrongful death claim was not pending before the trial court when Weiler and the Estate of Dr. Blackburn entered into the Release and Settlement Agreement.

{¶35} After the moving party files its motion for summary judgment, the nonmoving party has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988). Weiler has not met his burden under Civ.R. 56 for this Court to follow the holdings of *Riley* and *Leon* to find there is a genuine issue of material fact the Release and Settlement Agreement was not a general release, barring the application of *Losito* and *Wells*.

**Vicarious Liability Was Extinguished**

{¶36} Dr. Blackburn was an employee of KCH and was acting within the scope of his employment when he provided the allegedly negligent care to Weiler. Weiler and the Estate of Dr. Blackburn entered into a Release and Settlement Agreement where he settled the claim against the Estate of Blackburn but reserved his right to pursue a claim

against KCH. Even if Weiler met his burden under Civ.R. 56 to establish there was a genuine issue of material fact as to the terms of the Release and Settlement Agreement regarding a partial settlement demonstrating the agreement was not a general release, the law is clear that when there is a release of the agent, even a partial settlement with the agent bars a claim against the principal. *See Wells, supra.* Pursuant to *Losito* and its progeny, we hold that that because Weiler released the Estate of Dr. Blackburn from his claim of medical negligence, there is no basis to support Weiler's claim of vicarious liability against KCH.

{¶37} Weiler's sole Assignment of Error is overruled.

## CONCLUSION

{¶38} The judgment of the Knox County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, John, J., concur.